VILLAGE MOTORS, INC.

V.

AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION

Record No. 830519

VILLAGE MOTORS, INC.

V.

DERONDA D. BURNETTE, ET AL.

Record No. 830520

June 13, 1986

Present: All the Justices

*S. J. Thompson, Jr. (John T. Cook; Caskie, Frost, Hobbs, Thompson, Knakal & Alford,* on briefs), for appellant (Record No. 830519).

*David T. Petty, Jr. (J. Gorman Rosenberger, Jr.; Kizer, Phillips & Petty,* on brief), for appellee (Record No. 830519).

*S. J. Thompson, Jr. (John T. Cook; Caskie, Frost, Hobbs, Thompson, Knakal & Alford,* on briefs), for appellant (Record No. 830520).

*David T. Petty, Jr. (J. Gorman Rosenberger, Jr.; J. Leyburn Mosby, Jr.; Kizer, Phillips & Petty,* on brief), for appellees (Record No. 830520).

COMPTON, J., delivered the opinion of the Court.

These two appeals stem from one transaction and present a single issue under the Uniform Commercial Code (UCC). The question is whether a payee, which occupied the status of a holder in due course of a negotiable instrument, "dealt" with the drawer within the meaning of Code § 8.3-305, thus subjecting the holder to personal defenses to the instrument.

The facts are undisputed. On August 14, 1981, appellant Village Motors, Inc., a Lynchburg dealer, agreed to sell to appellee Deronda D. Burnette a 1975 Ford Mustang automobile for $2,750. Burnette wanted immediate possession of the vehicle and transfer of title. Village Motors agreed, upon condition that payment be made in cash or by a "bank check." Burnette made a cash deposit of $20 so that Village Motors would hold the vehicle

until she obtained a bank check for the balance of the purchase price.

On the same day, Burnette's father, upon her authorization, arranged with appellee American Federal Savings and Loan Association to withdraw funds from her savings account at American Federal. At the father's direction, a teller for American Federal drew a regular check, the instrument in question, on its account at United Virginia Bank payable to Village Motors in the amount of $2,730. The check was neither a cashier's check nor a certified check. The teller "assumed" the check would be used to pay for an automobile. The sum was charged against Burnette's account by American Federal.

The check was turned over to the father, who delivered it to Village Motors. Burnette was given possession of the vehicle and title was transferred to her. The check was deposited in the account of Village Motors at Virginia National Bank.

Subsequently, Burnette, apparently dissatisfied with the condition of the vehicle, returned it to Village Motors and requested American Federal to stop payment on the check. In turn, American Federal directed United Virginia Bank to stop payment on the instrument. When the check was presented for payment, it was returned to Virginia National Bank marked "payment stopped." By notice dated August 24, 1981, Virginia National advised Village Motors that payment had been stopped by American Federal and that $2,730 had been deducted from the account of Village Motors. American Federal refused Village Motors' demand for payment of the amount of the check.

In March 1982, Village Motors filed suit against American Federal for recovery of the sum of $2,730, with interest from August 14, 1981. Subsequently, Village Motors filed an identical action for the recovery of the same amount against both American Federal and Burnette. Following pretrial discovery, Village Motors and American Federal each moved for summary judgment. The trial court granted the latter motion and denied the former. We granted Village Motors appeals from December 1982 judgment orders in favor of American Federal in both cases. The action is still pending against Burnette.

Village Motors contends the trial court erred in denying its motion for summary judgment. Village Motors claims that it was a

payee occupying the status of a holder in due course of the instrument in question and, because American Federal has not raised any of the so-called "real" defenses, *see* § 8.3-305(2)(a) through (e), it is entitled to enforce the instrument against the drawer.

American Federal agrees that Village Motors qualifies as a holder in due course under the UCC. Nevertheless, the bank contends, Village Motors does not take the instrument free of the bank's defenses.

The bank argues that "Village Motors required Burnette, as a condition to the delivery of title to the vehicle, to obtain and deliver to Village Motors the American Federal check, which was considered by Village Motors to have been the equivalent of a certified or cashier's check." Accordingly, the bank says, Village Motors has "dealt" with American Federal within the meaning of Code § 8.3-305(2) and, under the provisions of that statute, takes the instrument subject to the bank's defenses. The bank next contends that any contractual obligation which may have existed between it and Village Motors, based on the mere act of drawing the check payable to Village Motors, was not supported by consideration, or any recognized substitute for consideration. Thus, the bank maintains, the existence of this "personal" defense precludes any recovery against it on the check by Village Motors. We disagree with the bank's argument.

■ Code § 8.3-302(1) provides, as pertinent here, that a holder in due course is a holder who takes the instrument for value, in good faith, and without notice of any defense against it on the part of any person. Apropos this case, subsection (2) of the statute provides that "[a] payee may be a holder in due course." But Code § 8.3-305 provides "[t]o the extent that a holder is a holder in due course he takes the instrument free from . . . (2) all defenses of any party to the instrument *with whom the holder has not dealt* . . . ." (emphasis added). We are of opinion that the payee Village Motors, which admittedly was a holder in due course, had not "dealt" with the drawer, American Federal, within the meaning of § 8.3-305(2).

Section 8.3-305(2) is viewed generally as a limitation on the broad statement in § 8.3-302(2) that a payee may be a holder in due course. "Presumably the restriction discriminates against those parties who are holders in due course because they fulfill all

the requisites of section [8.]3-302(1), but who are so involved with the disputed transaction that they should not be free from defenses." *Chicago Title and Trust Co. v. Walsh*, 34 Ill. App.3d 458, 468, 340 N.E.2d 106, 113 (1975). *See* J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code § 14-7 (2d ed. 1980); Comment, *The Concept of Holder in Due Course in Article III of the Uniform Commercial Code*, 68 Col.L. Rev. 1573, 1575-84 (1968).

Even though the term "dealt" is imprecise and the scope of the term is not explained in § 8.3-305, guidance in its application may be gleaned from the examples contained in the Official Comment to § 8.3-302. According to Comment 2, in the following case, among others, the payee is a holder in due course:

> "a. A remitter, purchasing goods from P, obtains a bank draft payable to P and forwards it to P, who takes it for value, in good faith and without notice as required by this section."

This hypothetical corresponds to the facts of the present case. Although included under § 8.3-302, this example has been viewed as applying to the meaning of "dealt" in § 8.3-305(2) and as illustrating a situation "in which the payee does not deal with the drawer or maker and thus takes free of defenses." White and Summers at 568. "Remittance transactions are the common examples where most authorities are agreed the payee should be free of defenses." 68 Col.L.Rev. at 1582.

■ Here, there was no direct interchange between Village Motors and American Federal. Contrary to the bank's contention, Village Motors did not require Burnette to obtain and deliver "the" American Federal check. Rather, Village Motors only required "a" bank check before possession of the vehicle was released, without specifying any particular banking institution. Clearly, Burnette, who was negotiating at arms length with Village Motors, is not deemed to have been the agent of Village Motors for the purpose of procuring the bank check. She operated independently through her father to obtain the check with which to close the transaction and to transmit the instrument to Village Motors.

■ The facts in the present case, demonstrating a lack of dealing between the holder-payee and the drawer, are in marked contrast to similar facts in *Wilmington Trust Co. v. Delaware Auto Sales*, 271 A.2d 41 (Del. 1970), where there was the required dealing to make the holder subject to the defense of want or failure of consideration. In that case, Hoopes purchased a used car from Delaware Auto Sales. He paid for the vehicle with a personal check drawn on Wilmington Trust Company in the amount of $1,550. The next morning, due to dissatisfaction with the car, Hoopes called a branch of the bank and stopped payment on the check. About one hour later, the owner of Delaware Auto Sales went to another branch of the bank and exchanged Hoopes' personal check for a "treasurer's check" in the same amount. *Id.* at 41. The bank investigated the adequacy of Hoopes' funds and did not discover, or had not received, notice of the stop-payment order. A "hold" was placed on Hoopes' account for the amount of the treasurer's check. Later, when the treasurer's check was presented for payment, the stop-payment order was noticed and the check was cancelled.

The dealer sued the bank for the amount of the check. The bank alleged want or failure of consideration and mistake. The dealer contended it was a holder in due course and therefore was not subject to those defenses. The Delaware Supreme Court held that, even if the dealer was a holder in due course, the dealer dealt directly with the bank and thus was not immune from the defenses. *Id.* at 42. There, unlike the present case, there was direct contact between the holder and the drawer concerning the transaction.

■ Accordingly, we hold that Village Motors may enforce its rights as a holder in due course of the instrument free of American Federal's personal defenses because it did not "deal" with American Federal, and that the trial court erred in ruling to the contrary. Therefore, we will reverse the judgments in favor of American Federal. In the. action against American Federal and Burnette, we will enter final judgment in favor of Village Motors for $2,730, with interest from August 14, 1981, and remand the case for further proceedings, if any, against defendant Burnette. In the other identical action against American Federal, we will

dismiss the case to avoid entering two judgments in the same amount on the same cause of action against the same defendant.

Record No. 830519 - *Reversed and dismissed.*
Record No. 830520 - *Reversed, final judgment, and remanded.*